FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 26, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEY ANTHONY ANDY,<br><br>Defendant. | No. 1:23-CR-02054-MKD<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL<br><br>**ECF No. 88** |

On July 23, 2024, the Court conducted a hearing on Defendant's Motion for Judgment of Acquittal, ECF No. 88. ECF No. 94. AUSAs Bree Black Horse and Todd Swensen represented the United States. AFDs Juliana Van Wingerden and Craig Webster represented Defendant, who was present and in custody. The Court has reviewed the briefing, heard from counsel, and is fully informed.

Defendant seeks judgment of acquittal, contending that the United States presented insufficient evidence that the assault at issue occurred in "Indian country" as defined by 18 U.S.C. § 1151. ECF No. 88 at 2. For the reasons explained below, the Court denies the motion.

ORDER - 1

# BACKGROUND

## A. Procedural History

Defendant Joey Anthony Andy was indicted for assault with a dangerous weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(3), 1153. ECF No. 1. The Indictment alleged that on April 4, 2023, Defendant assaulted E.E. within the external boundaries of the Yakima Nation, in Indian Country. *Id.* The Court conducted a jury trial. ECF Nos. 74, 76, 77. After the close of the United States' case, Defendant orally moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, which the Court denied. ECF No. 77. Defendant did not present evidence. The jury returned a guilty verdict. *Id.*; ECF No. 81. Defendant timely filed the instant Motion for Judgment of Acquittal. ECF No. 88.

## B. Summary of Relevant Trial Evidence

At trial, the evidence demonstrated that Defendant attacked E.E. with a knife outside Noah's Ark, a homeless shelter in Wapato, Washington, on April 4, 2023. E.E. sustained a laceration to his head and sought help from employees of Noah's Ark, who called 911. Numerous witnesses, including E.E. and multiple employees of Noah's Ark, testified that the assault occurred on the sidewalk outside of Noah's Ark.

1     The issue Defendant raises is whether there was sufficient evidence
2  indicating that the location of the assault was in Indian Country.  The evidence as
3  to that issue is summarized as follows:
4     Makala McElroy, the Director of Noah's Ark Homeless Shelter, testified
5  that she has worked at Noah's Ark for three to four years.  *See* ECF No. 76.  She
6  testified that Noah's Ark is located in Wapato, Washington, on the Yakama Nation
7  Indian Reservation.  She testified that Noah's Ark is the only low-barrier homeless
8  shelter on the Yakama Nation Indian Reservation.  On cross-examination, she
9  confirmed that she is familiar with the location of Noah's Ark and the surrounding
10 area.  She identified Exhibit Nos. 1, 2, and 3 as surveillance-camera footage from
11 Noah's Ark that depicts Noah's Ark and the surrounding area on April 4, 2023,
12 and captured the altercation between Defendant and E.E.
13    Wapato Police Officer Arthur Alcazar testified that he has worked for
14 Wapato Police Department for approximately two-and-a-half years and was on
15 duty on April 4, 2023.  ECF No. 85 at 3, 8.  He stated that "Wapato is located on
16 the Yakama Nation Indian Reservation, approximately 20 minutes south of
17 Yakima," and "in Yakima County."  *Id.* at 4, 6.  He was born in Sunnyside,
18 Washington, and has lived in the Yakima Valley area since, except for a four-year
19 period where he served in the Marine Corps.  *Id.* at 3-4.  He testified that as a law
20 enforcement officer it is important that he understand his jurisdictional boundaries,

ORDER - 3

and he has a Special Law Enforcement Commission through the Bureau of Indian Affairs, as an officer who works on a reservation. *Id.* at 4. He explained that this commission authorizes him to perform law enforcement duties with respect to tribal members when on a reservation, where he would otherwise lack jurisdiction as he is not a tribal police officer. *Id.* at 4-5. He received related training through the Bureau of Indian Affairs. *Id.* at 5.

On April 4, 2023, Officer Alcazar was patrolling within Wapato city limits and responded to a reported assault at Noah's Ark. *Id.* at 8-9. A bystander reported that the suspect had left the area, headed south on South Wapato Avenue. *Id.* at 12. In Officer Alcazar's investigation of the surrounding area, he saw Defendant approximately five blocks away from Noah's Ark, in the 400 block of Larena Lane,[1] and he eventually detained Defendant near 704 Larena Lane. *Id.* at 19-24, 27-28. A woman came out from the residence at 704 Larena Lane, who he later identified as Sharon Andy. *Id.* at 27-28. Yakama Nation Police Officer Gudino was on scene. *Id.* at 30. Officer Alcazar testified that after officers

---

[1] Tarilyn Shuster, who was walking with Defendant when he was contacted by Officer Alcazar, ECF No. 85 at 25, testified that Larena Lane is an "Indian projects" neighborhood where Defendant's aunt lived. *See* ECF No. 76.

ORDER - 4

detained Defendant, the investigation was turned over to Yakama Nation Tribal Police. *Id.* at 22.

## LEGAL STANDARD

A defendant may move for a judgment of acquittal after the close of the prosecution's evidence, or after a guilty verdict, and the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c)(1). The court must "view the evidence in the light most favorable to the Government and must affirm if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Amintobia*, 57 F.4th 687, 697 (9th Cir. 2023) (quoting *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc)) (emphasis in original). If the factual record "supports conflicting inferences," the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (quoting *Nevils*, 598 F.3d at 1163-64) (quotation marks omitted).

## DISCUSSION

Defendant contends the United States presented insufficient evidence to prove that the assault occurred in Indian country as that term is defined by 18 U.S.C. § 1151. ECF No. 88.

ORDER - 5

### A. "Indian Country" Element

*1. Legal Definition*

The United States has exclusive criminal jurisdiction over "a felony assault under [18 U.S.C. §] 113" committed by an Indian "against the person or property of another Indian or other person" and "within the Indian country." 18 U.S.C. § 1153(a). "Indian country," as used in Section 1153(a), is defined by 18 U.S.C. § 1151. In relevant part, Section 1151 defines Indian country as including "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation . . . ." 18 U.S.C. § 1151(a). "The broad definition of 'Indian country' in [Section 1151] reflects an attempt by Congress to 'remove the uncertainty' as to the limits of federal criminal jurisdiction over Indian territory." *Confederated Tribes & Bands of the Yakima Nation v. Cnty. of Yakima*, 903 F.2d 1207, 1215 (9th Cir. 1990) (quoting *Hilderbrand v. Taylor*, 327 F.2d 205, 206 (10th Cir. 1964)), *vacated in other part by* 960 F.2d 793 (9th Cir. 1992).

Where a federal court's jurisdiction over a matter depends on federal jurisdiction over a specific geographic area "the court may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact." *United States v. Gipe*,

ORDER - 6

672 F.2d 777, 779 (9th Cir. 1982) (citing *United States v. Jones*, 480 F.2d 1135, 1138 (2d Cir. 1973)) (other citations omitted).

2. *Jury Instruction*

The Court instructed the jury that the charged offense required the following six elements:

> First, on or about April 4, 2023, the defendant assaulted E.E. by intentionally striking him;
> Second, the defendant acted with the intent to do bodily harm to E.E.;
> Third, the defendant used a dangerous weapon;
> Fourth, the assault took place within the boundaries of the Yakama Nation Indian Reservation, which I instruct you is Indian Country;
> Fifth, the defendant is an Indian; and
> Sixth, the defendant did not act in reasonable self-defense.

ECF No. 87 at 15. Defendant argues that the United States failed to prove the fourth element beyond a reasonable doubt—i.e., that his offense was committed within Indian country. ECF No. 88 at 2.

3. *Status of the Land Parcel*

Defendant asserts that the United States presented insufficient evidence that the assault occurred in Indian country by failing to demonstrate certain facts about the parcel of land where the offense occurred. For example, he challenges the lack of evidence at trial about whether "this offense occurred on trust land," "who is the legal owner of that sidewalk location near Noah's Ark in the City of Wapato," or

ORDER - 7

"whether [that] sidewalk near the alleyway is land held in trust by the United States for the benefit of the Confederated Bands of the Yakama Nation."[2]  ECF No. 88 at 8-9.

18 U.S.C. § 1151(a) does not require a showing that reservation land is held in trust or owned by any particular entity to establish that the land is Indian country.  Rather, Section 1151(a) applies to "all land within the limits of any Indian reservation . . . notwithstanding the issuance of any patent."  As the Ninth Circuit has explained, this phrase indicates that it is unnecessary to determine "who holds title" to the land to find that the land is Indian country as defined in 18 U.S.C. § 1151(a).  *Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076, 1079-80 (9th Cir. 2019); *see also Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 358 (1962) ("Such an impractical pattern of checkerboard jurisdiction was avoided by the plain language of § 1151[.]").

Defendant alternatively suggests that the United States "bears the burden of proving that the site of the offense was not a non-Indian community as part of its proof that the offense occurred in Indian country."  ECF No. 88 at 5 (quoting *Gipe*,

---

[2] Defendant retreats from this argument in his Reply, acknowledging that "the crucial distinction is not whether the location of [Defendant's offense] is held in fee simple or trust land."  ECF No. 91 at 6.

ORDER - 8

672 F.2d at 779) (quotation marks omitted).  The quoted section of *Gipe* comes from the Ninth Circuit's analysis of 18 U.S.C. § 1156, a statute distinct from 18 U.S.C. § 1151.  *See Gipe*, 672 F.2d at 779; 18 U.S.C. § 1151 ("*Except* as otherwise provided in sections 1154 and 1156 of this title . . .") (emphasis added). Section 1156, which prohibits the unlawful possession of intoxicating liquors in Indian country, contains a narrower definition of Indian country that excludes "fee-patented lands in non-Indian communities or rights-of-way through Indian reservations."[3]  18 U.S.C. § 1156.  The Ninth Circuit noted the general principle that, "when an exception is incorporated in the enacting clause of a [criminal] statute, the burden is on the prosecution to plead and prove the defendant is not within the exception."  *Gipe*, 672 F.2d at 779 (quoting *United States v. Vuitch*, 402 U.S. 62, 70 (1971)) (quotation marks omitted).  The court therefore concluded that it was the prosecution's burden to prove "that the site of the offense was not a non-Indian community" in order to convict the defendant of a Section 1156 offense.  *Id.*

        This case does not involve a prosecution under Sections 1154 or 1156. Section 1151(a) does not exclude land in non-Indian communities from its

---

[3] Section 1154, which prohibits the unlawful dispensing of intoxicating liquors in Indian country, contains a similar exclusion in its definition of Indian country.  *See* 18 U.S.C. § 1154(c).

ORDER - 9

definition of Indian country. Therefore, the United States was not required to prove that the site of Defendant's offense was not a non-Indian community.

"The issue of what constitutes Indian country is properly a matter for the judge and not the jury." *United States v. Sohappy*, 770 F.2d 816, 822 n.6 (9th Cir. 1985) (citation omitted). Defendant has not seriously contended that the Yakama Nation Indian Reservation is not an "Indian reservation under the jurisdiction of the United States Government" under Section 1151(a).[4] The Court instructed the jury accordingly. *See* ECF No. 87 at 15 ("the Yakama Nation Indian Reservation, which I instruct you is Indian Country"). Therefore, the remaining issue is whether

---

[4] The Supreme Court has described the Yakama Nation Indian Reservation as follows:

> The Yakima Indian Reservation, which was established by treaty in 1855, . . . covers approximately 1.3 acres in southeastern Washington State. Eighty percent of the reservation's land is held by the United States in trust for the benefit of the Tribe or its individual members; 20 percent is owned in fee by Indians and non-Indians as a result of patents distributed during the allotment era. . . . Some of this fee land is owned by the Yakima Indian Nation itself. The reservation is located almost entirely within the confines of . . . Yakima County.

*Cnty. of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation*, 502 U.S. 251, 256 (1992) (citations and paragraph break omitted).

ORDER - 10

there was sufficient evidence for the jury to conclude that the assault was committed on the Yakama Nation Indian Reservation.

**B. Sufficiency of the Evidence at Trial**

Defendant raises the following issues: (1) that Officer Alcazar was "conclusory" when testifying that Wapato is located on the Yakama Nation Indian Reservation, ECF No. 88 at 6-7; (2) that the maps in Exhibit Nos. 11 and 13 did not reflect the boundaries of the Reservation, *id.* at 9-11; and (3) that the United States otherwise failed to prove the locations of the Reservation's external boundaries, ECF No. 91 at 3-5 ("At minimum, the Government should have developed trial testimony from a witness outlining the North, South, East, and West boundaries of the Yakama Reservation.").

*1. "Conclusory" Testimony*

As to the first argument, Defendant cites no authority supporting his assertion that this testimony was "conclusory" and therefore insufficient. *See* ECF No. 91 at 3, 5. At the motion hearing, defense counsel seemed to contend Officer Alcazar's testimony on this point lacked foundation. Defendant initially objected to this testimony as speculative. ECF No. 85 at 4. The Court directed the United States to lay further foundation. *Id.* The United States complied, and Defendant did not renew his objection after the additional foundation was laid. *Id.* at 4-6. A Fed. R. Crim. P. 29 motion is not the appropriate vehicle to raise an objection that

ORDER - 11

could have been, but was not, timely raised at trial. *See United States v. Moreland*, 622 F.3d 1147, 1166 (9th Cir. 2010) ("[A] Rule 29 motion challenging the sufficiency of the evidence cannot substitute as a timely objection to the jury instructions.") (citation omitted).

Regardless, the witnesses who testified to the above facts demonstrated sufficient foundation for that testimony. Officer Alcazar testified that he has lived in the Yakima Valley for most of his life, has worked for Wapato Police Department for two-and-a-half years, and received training from the Bureau of Indian Affairs related to the police work he performs on the reservation involving his jurisdiction and ability to police enrolled tribal members on the reservation. ECF No. 85 at 4-6. Similarly, Ms. McElroy testified that she has worked for Noah's Ark for three to four years and currently serves as its Director. These witnesses' years of experience in the relevant area provide a sufficient basis for their testimony that Noah's Ark and Wapato are within the boundaries of the Yakama Nation Indian Reservation.

    2. *How Jurisdictional Location May Be Proved*

Defendant's second and third arguments contend that the United States was required to introduce certain types of evidence to prove that the offense occurred within the Yakama Nation Indian Reservation, e.g., maps or more specific testimony. Defendant has not provided supporting authority for these arguments.

ORDER - 12

The Court finds the Ninth Circuit's analysis in *United States v. Warren*, 984 F.2d 325, 327 (9th Cir. 1993) instructive. In *Warren*, the defendant was convicted of first-degree murder (18 U.S.C. § 1111), attempted murder (18 U.S.C. § 1113), and assault with a dangerous weapon (18 U.S.C. § 113) committed at the Schofield Barracks, a U.S. Army base. *Id.* at 327. All three convictions required proof that the offense was committed "within the special maritime and territorial jurisdiction of the United States," which would include, as a matter of law, an army base like Schofield Barracks under 18 U.S.C. § 7(3). *Id.* at 327 n.1, 328. The defendant argued on appeal that "the government failed to prove, and the court failed to instruct the jury, that the offense was committed within the special maritime and territorial jurisdiction of the United States." *Id.* at 327.

The Ninth Circuit concluded that the trial court erred in failing "to instruct the jury that it must find beyond a reasonable doubt that the crime was committed on the Schofield Barracks." *Id.* at 328. However, the court found "*no reasonable possibility* that failure to instruct the jury on the jurisdictional element of the offense affected the verdict[,]" where "the prosecution presented uncontroverted testimony that the crime occurred outside the Paradise Club, that the Paradise Club was an enlisted men's club at Schofield Barracks, and that Schofield Barracks was a United States Army base in Hawaii[,]" and the defendant had not attempted to impeach or controvert this evidence. *Id.* (citing *United States v. Rubio-Villareal*,

ORDER - 13

967 F.2d 294, 296 n.3 (9th Cir. 1992)) (emphasis added).  In other words, even if the district court had provided the omitted instruction, no reasonable jury would have reached a verdict of acquittal given this uncontested proof.  *See id.*

The Court is unpersuaded by defendant's assertion that "[a]t minimum," the United States should have introduced evidence establishing "the North, South, East and West boundaries of the Yakama Reservation." ECF No. 91 at 5.  Although *Warren* primarily concerned an omitted jury instruction, the opinion also makes clear that the United States does not necessarily need to prove the boundary of a jurisdictional area to prove that the offense occurred within that boundary.

Here, similar to the offer of proof in *Warren*, the United States presented uncontroverted testimony from Officer Alcazar, Ms. McElroy, and other witnesses that Defendant committed the offense on the street beside Noah's Ark, that Noah's Ark is a homeless shelter in Wapato, and that Wapato and Noah's Ark are located on the Yakama Nation Indian Reservation.  *See Warren*, 984 F.2d at 328.  There was also testimony indicating that, after Defendant left Noah's Ark, he was detained a few blocks away at the tribal housing community on Larena Lane, and that Yakama Nation Tribal Police responded to the scene and took over the investigation.  These facts further support the inference that the offense occurred on the Yakama Nation Indian Reservation.  Defendant made no attempt to impeach or controvert this evidence.  *See id.*

ORDER - 14

*3. Diminishment of Reservation Lands*

Defendant suggests that the United States was also required to establish that Congress had not disestablished or diminished the boundaries of the Yakama Nation Indian Reservation. ECF No. 88 at 4 (citing *United States v. Jackson*, 697 F.3d 670 (8th Cir. 2012)); ECF No. 91 at 7 & n.11 (citing *Jackson*, 697 F.3d 670).

In *Jackson*, 697 F.3d at 671, the defendant moved to dismiss the indictment, contending that the Red Lake Reservation had been diminished by a 1905 statute and no longer encompassed the place of his offense. The Eighth Circuit found that the text and legislative history of the 1905 statute did not conclusively say whether or not the reservation had been diminished. *Id.* at 677. Given this uncertainty, Supreme Court precedent mandated consideration of other contextual factors, and the court concluded that the prosecution, "having the burden to prove this element of the offense, failed to come forward with extrinsic evidence of these additional factors that would permit a court to conclude, as a matter of law, that the reservation was not diminished by the 1905 Act." *Id.* at 677-78.

The Court declines to interpret *Jackson* as requiring the United States to produce an exhaustive history of the laws establishing and modifying the boundaries of the Yakama Nation Indian Reservation in every case. If there was a serious question in the record as to whether the Reservation had been diminished to potentially exclude the area near Noah's Ark, the United States would be required

ORDER - 15

to prove that no diminishment occurred or that the diminishment did not extend to the relevant area. But there is no such question in the record. On the contrary—according to the map Defendant submitted, the city of Wapato sits comfortably within the boundaries of the Yakama Nation Indian Reservation. ECF No. 92-1 at 1; *see also Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408, 430 n.12 (noting that the boundaries of the Yakama Nation reservation include "the incorporated towns of Toppenish, Wapato, and Harrah"), 467 n.9 (Blackmun, J., concurring) (same) (citing *Confederated Tribes & Bands of the Yakima Indian Nation v. Whiteside*, 828 F.2d 529, 531 (9th Cir. 1987)).

## CONCLUSION

For the above reasons, the Court finds that a rational jury could have concluded from the trial evidence that Defendant committed the charged assault within the boundaries of the Yakama Nation Indian Reservation. *See Amintobia*, 57 F.4th at 697. The Court denies Defendant's Motion for Judgment of Acquittal.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Judgment of Acquittal, **ECF No. 88**, is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and provide copies to all counsel.

DATED July 26, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 17